**William WALKER, Petitioner-Appellant,**

v.

**John WILMOT, Superintendent, Elmira Correctional Facility, Respondent-Appellee,**

No. 984, Docket 79–2020.

United States Court of Appeals, Second Circuit.

Argued May 31, 1979.

Decided June 29, 1979.

Allen E. Burns, New York City (William E. Hellerstein, New York City, of counsel), for petitioner-appellant.

Tyrone Mark Powell, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

William Walker appeals from a judgment of the United States District Court for the Eastern District of New York, Charles P. Sifton, J., denying his petition for a writ of habeas corpus. In 1975, appellant pleaded guilty to felony murder in New York State Supreme Court, Kings County, after the state court denied his motion to suppress his confession. He was sentenced to 15 years to life. The judgment of conviction was affirmed by the Appellate Division, Second Department, and the New York State Court of Appeals denied leave to appeal. The chief argument made to us is that Judge Sifton erred in failing to hold that Walker's confession was obtained in violation of his constitutional rights. Walker also contends that, in deciding this question, the district judge should have taken into account testi-

mony given by Walker in the district court rather than relying solely on the record developed at the state suppression hearing. We hold that the district court erred in following the latter course and we remand for further consideration of the petition for habeas corpus consistent with this opinion.

I

At about 4:00 p. m. on September 4, 1973, appellant and his co-defendants, Roy A. Sanders and Seth Lee Doby, were arrested in connection with the fatal shooting of a storekeeper a short while before, and taken to a station house. Around 5:15 p. m., Detective Arthur Lasky began questioning Doby, who confessed within 15 minutes. Lasky then spoke with Sanders, who also quickly confessed. At approximately 7:15 p. m. Lasky began questioning appellant. Lasky advised appellant of his *Miranda* rights and asked, "Now that I have advised you of your rights are you willing to answer questions without an attorney present?" Appellant responded negatively to this question and Lasky terminated the interview.

Assistant District Attorney William Weinman arrived at the station house at about 5:30 or 6:00 p. m. and interrogated Doby and Sanders first, obtaining confessions from both of them. Weinman began interrogation of Walker at around 8:20 p. m. after having been informed that he had refused to speak to officer Lasky. Weinman advised appellant of his *Miranda* rights and the following dialogue then took place:

Q. I've told you all these rights which you have told me you understand. Are you now willing to answer my questions without having a lawyer present?

A. No.

Q. You want to have an attorney present?

A. Yes.

Q. Thank you, the interview is concluded.

At this point the reporter was excused and the next ten minutes are off the record. According to the testimony of Lasky and Weinman at the state suppression hearing, they had a conversation in Walker's presence between themselves concerning the charges against Walker, which included homicide. Apparently surprised at the mention of homicide, Walker asked what he was going to be charged with, and Weinman told him homicide. Walker replied, "[W]hat do you mean homicide? I didn't shoot anyone." Then either Weinman or Lasky responded to the effect that they knew he didn't shoot anyone because Sanders had already confessed to the shooting, but that Walker had been implicated by Sanders. Walker requested to see Sanders, who confirmed this statement. Immediately after talking to Sanders, Walker agreed to give a statement to Weinman.

Walker's version of the events leading up to his confession is substantially different. The district judge took Walker's testimony on the circumstances of his confession in the course of a hearing on whether Walker's failure to testify at his state suppression hearing was due to a reason other than his inexcusable neglect. Although Walker was cross-examined on his testimony relating to the confession, the district judge did not provide a full evidentiary hearing on that question. Walker testified before Judge Sifton that prior to talking to Weinman he had been held in a locker room, with his hands handcuffed behind him, and had been punched and slapped in the face and roughed up by a burly police officer for refusing to talk to Lasky. Walker stated that this treatment had continued intermittently until about half an hour before Weinman had started questioning him. Walker also testified that just after he had again declined to talk without an attorney being present, and apparently after the court reporter had left, as indicated above, the following conversation, initiated by Lasky, occurred:

[Lasky] said . . . "Okay, smart aleck, wise guy. You're going to be here all night."

So I figured he meant going back into the locker room; right? He said, "Hey, I know why you're not talking, because you shot the man." I said I didn't shoot

nobody. I was looking at Mr. Weinman. He's not looking at me, right? So he said, "Well, Sanders said you shot the man." I said, "I don't believe you." He said, "Bring him here," right? So Weinman said, "Yeah, go get Sanders, Detective Lasky."

So they brung Sanders and Lasky said, "Well, Sanders, didn't you tell me everything that happened?"

I said, "you telling him that I shot the man?" Lasky said, "That's enough, that's enough," and he took Sanders out.

He said, "See, see, I told you. You shot the man." I said, "I didn't shoot nobody." I asked Mr. Weinman, I say, "I want to know what I'm being charged with, you know?" Because this made me think that I'm getting into trouble by not saying nothing, right? So I said, "I want to know what the charge is." He said, "Are you going to speak? We'll see what it's going to be. Are you going to speak?" So I said, "Man"—I told—I waited all this time, right? I'm going to tell him, you know, invoking my right to remain silent all all night; right?

Q. That's what you said to them or to yourself?

A. This I was saying to myself, right? Because they were asking me, "Are you going to speak?" So I said it didn't make no difference no more. I told them I didn't want to talk and they still questioned me, right? So I said I might as well tell them anyway, right? So that's what I did.

After the court reporter returned, Walker gave a statement implicating himself in the attempted robbery in which the storekeeper was killed. The *Miranda* warnings were not repeated, but the interrogation was reopened with a series of questions concerning whether Walker had been threatened, beaten or promised anything during the off the record interval. Walker answered negatively to the inquiries. When asked whether anyone did anything to him other than permit him to talk to Sanders, Walker responded "I asked you what charge it was, you said you'll see what

it is and I still want to know the charge." Weinman answered "At this point, the charge is attempted robbery and homicide."

At the time he gave his confession, Walker was 17 years old. He had no prior convictions and he testified that he had never previously been subjected to custodial interrogation. There is no indication that he was given anything to eat during the four-hour period he was held in custody prior to confessing.

A pretrial hearing was held in the state court pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), with regard to whether Walker's statement should be suppressed. At this *Huntley* hearing, the state presented evidence concerning the circumstances of Walker's confession, but Walker himself did not testify or present any evidence. Before Judge Sifton in the district court, Walker testified that he had not given his version of the events preceding his confession during the *Huntley* hearing because he had not been aware of his right to testify at that time.

Although Judge Sifton permitted Walker to testify concerning the events leading up to the confession, the judge later ruled that he would not consider this testimony in determining whether Walker's rights had been violated. He found that Walker had received a full and fair hearing in the state court, that Walker's failure to present his version of the events at the state *Huntley* hearing was due to inexcusable neglect and thus that the district court should determine the merits of Walker's claim solely on the basis of the factual record made at the *Huntley* hearing. Judge Sifton then determined that the evidence introduced at that hearing supported the state court's determination that Walker's confession was given voluntarily and was not procured in violation of *Miranda's* procedural safeguards. The judge granted a certificate of probable cause, and this appeal followed.

II.

Appellant argues that Judge Sifton erred because the state court record alone estab-

lishes that Lasky and Weinman violated appellant's constitutional rights by exerting improper interrogatory pressures on an inexperienced 17-year old youth and by eliciting his confession without obtaining an explicit repudiation of his two assertions of his right to remain silent and to have counsel present. Appellant also argues that the district court should have considered appellant's testimony before it in support of his constitutional claim. Appellant's first contention presents difficult issues. In *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966), the Court said that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." In *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Court held that a suspect who asserts his right of silence, but who does not request an attorney, may thereafter be questioned about a different incident as long as the suspect's right to cut off questioning is "scrupulously honored" and he is not subjected to repeated rounds of questioning designed to undermine his will. In his concurring opinion in *Mosley,* Justice White expressed the view that while *Miranda* did not establish a per se rule against further interrogation of a suspect who asserts the right of silence, a request not to be questioned in the absence of an attorney did bar any further interrogation until an attorney is present. 423 U.S. at 109–110 & n. 2, 96 S.Ct. 321. See also *Brewer v. Williams,* 430 U.S. 387, 405 n. 10, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). But cf. *United States v. Lewis,* 425 F.Supp. 1166, 1175, 1177–79 (D.Conn.1977). Whether informing appellant of the serious nature of the charge against him and whether confronting him with damaging evidence constituted interrogation of appellant under *Miranda* are difficult issues on which strong arguments can be made either way.[1] Compare *Combs v. Wingo,* 465 F.2d 96 (6th Cir. 1972), with *United States v. Pheaster,* 544 F.2d 353, 365–68 (9th Cir. 1976), *cert. denied* sub nom. *Inciso v. United States,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977), and *United States v. Davis,* 527 F.2d 1110 (9th Cir. 1975), *cert. denied,* 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 196 (1976). See Kamisar, *Brewer v. Williams, Massiah,* and *Miranda:* What is "Interrogation"? When Does It Matter? 67 Geo.L.J. 1 (1978).

■ When faced with such difficult questions, it would seem essential to have the fullest possible information as to what actually occurred. Certainly if Walker's testimony in the district court were credited in substantial part, a completely different picture would emerge, and the constitutional question would be far easier to resolve. It thus becomes critical to determine whether Judge Sifton was correct in confining his scrutiny to the record in the state hearing. The judge relied on the rule announced in *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), that the federal district court in a habeas corpus proceeding should normally accept the facts as found by the state court if the petitioner received a full and fair evidentiary hearing in the state court. The Court enumerated various exceptions to this rule and Judge Sifton considered the effect of exception (5), "[i]f, for any reason not attributable to the inexcusable neglect of petitioner, . . . evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing," id. at 317, 83 S.Ct. at 759. The judge concluded that Walker's failure to testify at the state hearing was "inexcusable neglect." The judge did not refer to the exception in paragraph (6), where the Court said, "Our final category is intentionally open-ended because we cannot here anticipate all the situations wherein a hearing is demanded. . . . The duty to try the facts anew exists in every case in which the state court has not

---

1. We note that appellant claims not only that Weinman surprised him with the charge of homicide, but that Weinman hedged on what the charge would be, implying that if Walker reconsidered his decision not to give a statement without an attorney being present, the homicide charge might be dropped. The portion of the on the record exchange quoted above, where Weinman describes the charges as attempted robbery and homicide "[a]t this point," gives some support to this contention.

# 1042

after a full hearing reliably found the relevant facts." Id. at 317–18, 83 S.Ct. at 759. This statement is especially relevant when, as here, the state judge made no explicit findings at all. The statute, 28 U.S.C. § 2254(d), provides that a state court determination on the merits of a factual issue is not conclusive if it appears "(3) that the material facts were not adequately developed at the State court hearing" or "(6) that the applicant did not receive a full, fair, and adequate hearing in the state court proceeding . . . ."

■ The judge's reason for accepting the state court's determination without further evidence was apparently based on a statement made by the state court judge, informing the lawyers for defendants that each defendant had the right to offer proof and testimony. The statement was addressed entirely to the lawyers, although Judge Sifton noted that Walker acknowledged that he remembered that the state judge addressed defense counsel. We do not think that this was enough in the case of a young defendant with no previous criminal experience. Walker testified in the district court that he did not know the judge's statement meant he could personally take the stand and that his lawyer did not discuss it with him. It is true that Walker's attorney testified in the district court that he did advise Walker that Walker could offer evidence on his own behalf, although the attorney did not say that he advised Walker that he could do this without the testimony being used against him in the criminal trial on the merits. Moreover, although the attorney claimed Walker had told him nothing to suggest that his own testimony would be important, Walker's present attorney brought out that the state court attorney had cross-examined Lasky in a way suggesting knowledge of Walker's version. We believe that unless Walker himself was specifically and fully advised by counsel or the state judge of his right to testify without adverse consequences and chose not to do so, his failure should not bar a federal hearing.

We therefore remand for Judge Sifton to reconsider whether Walker's testimony should be taken into account in the decision on the petition for a writ of habeas corpus. If the judge concludes that Walker's testimony should be considered, he should give the state an opportunity to present anything further it may wish by way of rebuttal to Walker's testimony, and then decide the case on the basis of all the evidence before him. If he adheres to his view that Walker was not entitled to present further evidence, or does not credit such evidence, the judge should enter a fresh judgment from which an appeal can be taken, which shall be heard by this panel, if practicable. The judgment is vacated and the case remanded.

MOORE, Circuit Judge (dissenting):

I dissent.

In my opinion the majority disregards the holding of the Supreme Court in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). As I read the majority opinion, the court holds that Judge Sifton incorrectly confined his scrutiny to the record in the state hearing. However, even if petitioner's testimony in the district court were credited in substantial part, the facts of the felony murder and the ensuing custody of petitioner justify Judge Sifton's denial of the habeas corpus writ.

It is likely that the majority was influenced, as they state, by the fact that petitioner was a "young defendant with no criminal experience," and "no prior convictions" who was "never previously . . . subjected to custodial interrogation" and who was apparently not "given anything to eat during the four-hour period he was held in custody prior to confessing". I find nothing in the Constitution itself or in Court interpretations thereof which gives to these factors overriding significance in light of the totality of facts in this case, including the seriousness of the offense. Nor is it claimed that the pangs of hunger were the motivating cause of the so-called confession.

I also take exception to the majority's substituting its version of the facts for that

found by the district court. Petitioner's attorney testified before Judge Sifton that "he did advise [petitioner] that [petitioner] could offer evidence on his own behalf". However, the majority states, as a matter of hindsight, "that the attorney did not say that he could do this without the testimony being used against him in the criminal trial on the merits".

I also do not agree with the majority's conception of the attorney's duty or that of the state court judge. The majority opinion states:

"We believe that unless [petitioner] himself was specially and fully advised by counsel or the state judge of his right to testify without adverse consequences and chose not to do so, his failure should not bar a federal hearing".

But a hearing is exactly what petitioner has had and *in extenso*. I am unwilling to impute to the majority the possible suggestion that only petitioner's testimony should be believed and all contrary testimony be disregarded.

Reviewing the proceedings briefly, Judge Sifton issued his first opinion on petitioner's habeas corpus application on May 26, 1978. Therein he found that "petitioner Walker has raised sufficient questions as to the conduct of the custodial interrogation to warrant a hearing on the circumstances of the petitioner's confession" (p. 10). Accordingly Judge Sifton appointed two mature and skilled attorneys of the Legal Aid Society "to make certain that this Court is appraised of all the relevant facts concerning the petitioner's Fifth Amendment claims. . . ." (p. 10).

A second hearing was held on October 12, 1978, at which petitioner testified. On December 28, 1978, a 25-page opinion was filed. Judge Sifton saw and heard petitioner and could appraise his credibility. Judge Sifton found that petitioner's failure to testify at the state court *"Huntley"* hearing "was due to his own inexcusable neglect". Petitioner had a "full, fair, and adequate hearing in the state court proceeding. . ." (28 U.S.C. § 2254(d)), at which he had counsel to advise him as to the strategy best suited to his interests. Thus, he is not entitled to a new hearing in federal court. Judge Sifton went on to examine the factual record produced in the state court and justifiably concluded that *Miranda* warnings were given, and scrupulously observed, and that, in particular, petitioner's right to cut off questioning was at all times "scrupulously honored". *Michigan v. Mosley,* 423 U.S. 96, 103, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Petitioner has had two hearings; at both he was represented by able counsel. An innocent grocer was murdered in the course of an armed robbery in which petitioner participated. All we know from petitioner about the robbery is that he "was laughing". A further hearing cannot change the facts; nor should it change Judge Sifton's obviously sound conclusions.

I would affirm on Judge Sifton's able analysis of the facts and the law in his opinions.