Joseph THOMAS, Petitioner,

v.

Walter D. ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent.

No. 81–7675.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1983.

978

Joseph M. Nursey, Millard C. Farmer, Andrea I. Young, Atlanta, Ga., for petitioner.

Daryl A. Robinson, Atlanta, Ga., for respondent.

Before FAY, VANCE and ARNOLD *, Circuit Judges.

VANCE, Circuit Judge:

In January 1977 appellant Joseph Thomas and his codefendant Ivon Ray Stanley were sentenced to death in separate proceedings for the armed robbery, kidnapping and murder of Clifford Floyd. The Supreme Court of Georgia affirmed the convictions and sentences for murder and kidnapping and vacated the conviction and sentence for armed robbery. *Thomas v. State,* 240 Ga. 393, 242 S.E.2d 1 (1977), *cert. denied,* 436 U.S. 914, 98 S.Ct. 2255, 56 L.Ed.2d 415 (1978).

Thomas then filed a state habeas corpus petition alleging that his trial counsel was constitutionally ineffective in failing to investigate or prepare for the penalty phase of the trial. An evidentiary hearing was held, at which Thomas was represented by new counsel. Thomas presented a number of witnesses at the hearing who testified that they would have been willing to appear during the punishment stage of the trial.[1] The court denied relief and denied a certificate of probable cause to appeal to the Supreme Court of Georgia. The United States Supreme Court denied certiorari. *Thomas v. Zant,* 444 U.S. 1103, 100 S.Ct. 1068, 62 L.Ed.2d 788 (1980).

Thomas filed a second state habeas corpus petition, alleging that counsel representing him at the earlier state habeas hearing had been ineffective. Following denial without hearing of this second petition, Thomas petitioned in federal court

---

* Honorable Richard S. Arnold, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Thomas contends that among the evidence of mitigation which could have been presented with minimal diligence by trial counsel was the following:

a) that he had no prior record of criminal offenses either as an adult or as a juvenile;

b) that he had no prior history of violence and was never a disciplinary problem;

c) that prior to his arrest he was regularly and gainfully employed and that he fully supported himself and assisted in supporting his parents and six younger siblings;

d) that he raised hogs to contribute to the support of his family;

e) that he regularly attended church and Sunday School;

f) that he had a good reputation in his community;

g) that while his older brother was in the service Thomas took care of his brother's children;

h) that he is a talented artist and that he could be productive in prison by further developing his artistic skills.

pursuant to 28 U.S.C. § 2254. The district court refused to order an evidentiary hearing and denied the petition. In its order denying the motion for a hearing, the district court reasoned that:

> A review of the Petitioner's motion shows that the proposed depositions and affidavit would relate to the question of ineffective assistance of counsel and this precise issue was presented to the Superior Court of Butts County, Georgia sitting as the state habeas corpus court and the Petitioner at that time had ample opportunity to present any evidence which he desired to present dealing with this question, and in fact did introduce the testimony of a number of witnesses. The identical issue was also presented to the Supreme Court of Georgia as a basis for granting Petitioner a certificate of probable cause to appeal the order of the state habeas corpus court which had denied the relief sought by the Petitioner. After a review of the matter the Supreme Court of Georgia denied the Petitioner's application. Thereafter the same issue was presented again to the Supreme Court, which denied the petition for a writ of certiorari. It is now this same issue concerning which the Petitioner desires to supplement the evidentiary record and it is obvious that the additional evidence would be no more than cumulative on the same issue.

**2.** 28 U.S.C. § 2254(d) provides in pertinent part:

> (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
>
> (1) that the merits of the factual dispute were not resolved in the State court hearing;
>
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

Thomas raises nine issues on appeal. Because we agree with him that the district court prematurely denied the petition without first holding an evidentiary hearing, we need not reach the remaining issues.

Thomas argues that the district court erred in denying his motion for an evidentiary hearing to allow the presentation of evidence on the issue of ineffective assistance of counsel at the penalty stage of his trial. Although Thomas acknowledges that the very issue of ineffective counsel was the subject of a state habeas proceeding, he argues that the record of that proceeding lacked crucial evidence "indispensible to a fair, rounded, development of the material facts." *Townsend v. Sain,* 372 U.S. 293, 321–22, 83 S.Ct. 745, 762, 9 L.Ed.2d 770 (1963). Included in that evidence is the affidavit of Thomas' trial counsel, in which counsel admitted that she had made no investigation or preparation for the penalty stage of the trial. Thomas further contends that the failure of his state habeas counsel to obtain and present the affidavit cannot be attributed to Thomas' "inexcusable neglect." *Id.* at 317, 83 S.Ct. at 759. Thomas argues that because "material facts were not adequately developed at the State court hearing," 28 U.S.C. § 2254(d)(3) and because the failure to so develop the facts was not his fault, the district court erred in applying a presumption of correctness, 28 U.S.C. § 2254(d),[2] to state findings of fact.

> (3) *that the material facts were not adequately developed at the State court hearing;*
>
> (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
>
> (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
>
> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
>
> (7) that the applicant was otherwise denied due process of law in the State court proceeding;
>
> (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a considera-

Thomas' first contention is that the state habeas court made no findings of the "basic, primary or historical facts," *Townsend v. Sain,* 372 U.S. at 309 n. 6, 83 S.Ct. at 755 n. 6, which give rise to a presumption of correctness under section 2254(d). *See Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1981); *Goodwin v. Balkcom,* 684 F.2d 794, 803–04 (11th Cir.1982); *Young v. Zant,* 677 F.2d 792, 794 n. 2 (11th Cir.1982); *Mason v. Balkcom,* 531 F.2d 717, 721 (5th Cir.1976). In *Mason v. Balkcom,* 531 F.2d at 722, however, we noted that "specific historical facts found by a state habeas court (such as what an attorney did for his client), to which a standard of law is applied in deciding a mixed question of fact and law, do merit section 2254(d)'s presumption of correctness in a federal habeas proceeding provided of course that those facts were adequate and fairly supported by the record." In the present case, the state habeas court made the primary factual finding that Thomas' counsel's decision to forego presentation of evidence at the penalty stage of the trial was an "apparent tactical decision." [3]

That determination is the sort of purely historical factfinding that receives the presumption of correctness · under section 2254(d), unless one or more of the eight factors listed in section (d) can be shown to exist. Thomas contends that he comes squarely within section (d)(3): the affidavit of his trial counsel bears directly on a material fact not adequately developed at the state proceeding. We agree.

> tion of such part of the record as a whole concludes that such factual determination is not fairly supported by the record[.] (emphasis added).

**3.** The state habeas court concluded that:
> In view of the case made against Petitioner and the type of defense presented, it cannot be said that counsel, *in an apparent tactical decision,* was ineffective by not offering further evidence. To do so, and introduce what could be termed as evidence of good character, would have been to invite rebuttal from the prosecution designed to discredit both Petitioner's character and testimony of lack of culpability. (emphasis added).

[■] The standards applicable to evidentiary hearings involving material facts not adequately developed at the state proceeding are governed by *Townsend v. Sain* and section (d) of the federal habeas corpus statute, 28 U.S.C. § 2254, which was added to the federal habeas statute in 1966. The interrelationship between them requires some elucidation. *Townsend v. Sain* delineated the criteria for determining when an evidentiary hearing would be mandated in federal habeas corpus and when it would be a matter for the district court's discretion. Charles Townsend had been convicted in state court of capital murder. The state courts rejected Townsend's contention that his confession was coerced because he had been administered a truth serum drug immediately prior to the confession. Lay and expert testimony at trial disclosed the identity of the drug but not that it was a "truth serum." *Id.* 372 U.S. at 321 n. 13, 83 S.Ct. at 761 n. 13. After exhausting his state remedies, Townsend filed for federal habeas relief. The district court denied the petition without holding an evidentiary hearing. The Supreme Court reversed and ordered a hearing to determine if the confession had in fact been coerced.

The Court held that "a federal evidentiary hearing is required unless the state court trier of fact has after a full hearing *reliably* found the relevant facts." *Id.* at 312, 83 S.Ct. at 757 (emphasis added). Chief Justice Warren's opinion then catalogued six circumstances in which a full plenary evidentiary hearing would be required even though the state court had made findings of fact.[4] The Court observed, as its fifth enu-

**4.** The six circumstances delineated by the *Townsend* Court were:
> We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) *the material facts were not adequately developed at the state-court hearing;* or (6) for any reason it appears that the state trier of fact did not afford

merated circumstance, that such a hearing must be held whenever "the material facts were not adequately developed at the state-court hearing." *Id.* at 313, 83 S.Ct. at 757. The Court explained that if, "for any reason not attributable to the *inexcusable neglect* of petitioner, see *Fay v. Noia,* [372 U.S. 391, 438, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (part V) (1963)], evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, a federal hearing is compelled." *Townsend v. Sain,* 372 U.S. at 317, 83 S.Ct. at 759 (emphasis added). The *Townsend* Court thus defined the inexcusable neglect standard in terms of a *Fay v. Noia*[5] deliberate

bypass. The Court in *Fay,* in turn, keyed deliberate bypass to the standard for waiver of constitutional rights articulated in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938): "an intentional relinquishment or abandonment of a known right or privilege." *See also Guice v. Fortenberry,* 661 F.2d 496, 506–07 (5th Cir.1981) (en banc) (summarizing the relationship between *Townsend, Fay,* and *Zerbst* ).[6]

The deliberate bypass test posed the danger that counsel might strategically withhold evidence or sandbag. This possibility was noted by judges who commented on *Townsend.*[7] Subsequent decisions, how-

---

the habeas applicant a full and fair fact hearing.
372 U.S. at 313, 83 S.Ct. at 757. (emphasis added).

**5.** The *Fay* Court observed:
If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. A choice made by counsel not participated in by the petitioner does not automatically bar relief.
372 U.S. at 439, 83 S.Ct. at 849. (footnotes and citations omitted).

**6.** In *Townsend* itself, the "crucial fact" not disclosed by the experts testifying at the state suppression hearing was that the substance injected into Townsend prior to his confession had "properties which may trigger statements in a legal sense involuntary." *Townsend v. Sain,* 372 U.S. at 321, 83 S.Ct. at 761.
The Court went on to explain:
This fact was vital to whether his confession was the product of a free will and therefore admissible. To be sure, there was medical testimony as to the general properties of hyoscine, from which might have been inferred the conclusion that Townsend's power of resistance had been debilitated. But the crucially informative characterization of the

drug, the characterization which would have enabled the judge and jury, mere laymen, intelligently to grasp the nature of the substance under inquiry, was inexplicably omitted from the medical experts' testimony. Under the circumstances, disclosure of the identity of hyoscine as a "truth serum" was indispensable to a fair, rounded, development of the material facts. And the medical experts' failure to testify fully cannot realistically be regarded as Townsend's inexcusable default. See *Fay v. Noia.*
*Id.* 372 U.S. at 321–22, 83 S.Ct. at 761–62. Thus, counsel's failure to draw information out of witnesses who were in court and testifying did not, for the *Townsend* Court itself, constitute deliberate bypass. As one commentator aptly noted, "with a little more imaginative questioning or out-of-court research, counsel might have been able to infer the qualities of the drug from what he already knew. Even so, his neglect did not bind petitioner." Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1131 n. 78 (1978); *see also* Wright & Sofaer, Federal Habeas Corpus for State Prisoners: The Allocation of Fact-Finding Responsibility, 74 Yale L.J. 895, 971 n. 273 (1966).

**7.** Judge Wright termed the "inexcusable neglect" standard of *Townsend* "the most difficult limitation [on the fifth circumstance] to apply." Wright & Sofaer, *supra,* note 6 at 960. Judge Caffrey observed in The Impact of the Townsend and Noia Cases on Federal District Judges, 33 F.R.D. 446, 450–51 (1963) that:
The 5th guide line laid down requires a hearing if the material facts "were not adequately developed at the State court hearing." This category is cross-referenced by the Chief Justice to the "inexcusable neglect" test of *Fay v. Noia.* I take this guide line to mean that if the district judge finds that evidence "crucial to the adequate considera-

ever, have brought the deliberate bypass test within manageable limits. In *Henry v. Mississippi,* 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965), for example, the Court put to rest the suggestion in *Fay* and *Zerbst* that only the defendant himself could make an effective waiver of constitutional rights. The Court held that counsel's decisions on trial strategy might "amount to a waiver binding on petitioner [which] would preclude him from a decision on the merits of his federal claim . . . ." *See also Coco v. United States,* 569 F.2d 367, 371 (5th Cir.1978); *Aaron v. Capps,* 507 F.2d 685, 690–92 (5th Cir.1975) (appendix); *Winters v. Cook,* 489 F.2d 174, 180 (5th Cir.1973) (en banc).

Concerns about sandbagging by counsel also proved important to the Supreme Court in its disposition of the state procedural default cases. In *Davis v. United States,* 411 U.S. 233, 241, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1973) and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court expressed concern that the *Fay* deliberate bypass test encouraged attorneys to ignore state contemporaneous objection rules and to refrain from objecting at trial and thus to build error into the record. *Davis* and *Sykes* replaced *Fay's* deliberate bypass standard with a more stringent "cause and prejudice test," at least in situations where a prisoner fails to follow a state procedural rule. *See also United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (procedural default); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (same); *Francis v. Henderson,* 425 U.S. 536,

96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) (same); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (barring federal habeas review of fourth amendment claims when the state courts provided a full and fair chance to litigate those claims).

Despite the rejection of the deliberate bypass standard in the procedural default and fourth amendment settings, the *Fay* test remains intact and workable in the context of the *Townsend* issue. In *Guice v. Fortenberry,* 661 F.2d 496, 507 n. 25 (5th Cir.1981) (en banc) the fifth circuit held that "neither the Supreme Court nor this Court has ever suggested that the standard developed in *Francis* and adopted in *Sykes* should replace the deliberate bypass standard in the *Townsend* inquiry. Indeed, the policies relied upon in those cases, federalism, comity and concerns for the orderly administration of criminal justice, do not apply when the prisoner has challenged the violations throughout the state process and the state has held proceedings directed at the constitutional claim reasserted in a federal habeas court." *See also Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (Powell, J. concurring); Hart, The Supreme Court, 1958 Term-Foreword: The Time Chart of the Justices, 73 Harv.L.Rev. 84, 101–119 (1959) (delineating the theoretical implications of distinguishing state procedural default and waiver of constitutional rights). The *Guice* court applied the deliberate bypass standard of *Fay-Zerbst* in ordering a remand for a federal evidentiary hearing:

> The neglect of Guice and Claxton to develop the crucial facts is not explained

tion of the constitutional claim" was not developed at the State hearing, a Federal district judge is compelled to hold a full evidentiary type hearing, unless the petitioner runs afoul of the "inexcusable default" described in *Fay v. Noia.* This, in turn, means that a failure to develop the constitutional claim in state court will be held against the applicant only if he can be found to have knowingly and intelligently waived his right to do so personally and not through counsel, under the test set out in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019 [1023], 82 L.Ed. 1461.

Thus, it appears that this test may result in much second-guessing of the strategy em-

ployed by defense counsel in state court criminal trials. Defense counsel will be criticized for developing a case in State court one way rather than another. For example, the lawyer who represented Townsend omitted from his presentation of the defense only the words "truth serum" and his failure to use this phrase would appear to be the key to the successful attack on the State court trial.

I suspect that the phrase "evidence crucial to the adequate consideration of the constitutional claim" will spawn litigation revolving around the meaning of the words "crucial" and "adequate."

by the record. There is no substantial allegation that the petitioners made a tactical choice to leave the evidence undeveloped. It appears more likely that, based on the inartful and scattershot nature of the various motions, the defendants and their attorneys did not appreciate fully the relevance of the missing evidence. Such neglect is not inexcusable within the meaning of *Fay v. Noia.* The Court in *Townsend* noted that an expert witness "inexplicably" failed to develop the "crucially informative characterization" of the drug involved as a "truth serum."

*Id.* at 507.[8]

Thus, *Townsend,* and by reference *Fay* and *Zerbst,* teach that only a deliberate bypass or inexcusable neglect on a petitioner's part in failing to develop material facts at prior proceedings will prevent a petitioner from securing a federal evidentiary hearing under the fifth circumstance of *Townsend.* The concepts of deliberate bypass and waiver of constitutional rights have been extensively elaborated in the case law binding on this court. *See Buckelew v. United States,* 575 F.2d 515, 519 (5th Cir. 1978); *Coco v. United States,* 569 F.2d 367, 369–71 (5th Cir.1978); *Jiminez v. Estelle,* 557 F.2d 506, 508–09 (5th Cir.1977); *McKnight v. United States,* 507 F.2d 1034, 1036–37 (5th Cir.1975); *Aaron v. Capps,* 507 F.2d 685 (5th Cir.1975); *Morris v. United States,* 503 F.2d 457, 459 (5th Cir.1974); *Winters v. Cook,* 489 F.2d 174, 176–81 (5th Cir.1973) (en banc); *Montgomery v. Hopper,* 488 F.2d 877, 879 (5th Cir.1973). Further, deliberate bypass and inexcusable neglect derive content from the parallel development of the abuse of the writ doctrine. That doctrine, which governs successive federal habeas applications, states that inexcusable neglect or deliberate bypass

constitutes an abuse of the habeas writ. *See McShane v. Estelle,* 683 F.2d 867 (5th Cir.1982); *Vaughan v. Estelle,* 671 F.2d 152 (5th Cir.1982); *Potts v. Zant,* 638 F.2d 727 (5th Cir.), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981); *Paprskar v. Estelle,* 612 F.2d 1003 (5th Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980); *Haley v. Estelle,* 632 F.2d 1273 (5th Cir.1980); *Mays v. Balkcom,* 631 F.2d 48 (5th Cir.1980).

This, then, was the state of the law derived from *Townsend.* In 1966 Congress added section (d) to 28 U.S.C. § 2254. *See* note 2 *supra.* Section (d) provides that a state factual determination that is "supported by reliable and adequate written indicia, shall be presumed to be correct" unless the petitioner can establish or it otherwise appears that the state proceeding was deficient in one of eight specified respects. The amendment essentially retains all of the *Townsend* categories with some slight changes in phrasing and adds three additional categories, though these three categories "would not appear to change the law," P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1505 n. 7 (2d ed. 1973). The third of the section 2254(d) factors is virtually identical to the fifth circumstance listed in *Townsend.* The *Townsend* Court's standard was that a federal evidentiary hearing must be held if "the crucial facts were not adequately developed at the State court hearing." Section 2254(d)(3) substitutes the word "material" for "crucial."

The question of what effect, if any, the new amendment has upon the law derived from *Townsend* and its progeny has been left open by the Supreme Court.[9] Recently,

---

8. The second circuit also appears to apply the *Fay* standard to *Townsend* cases even after *Sykes* and its progeny. *See Walker v. Wilmot,* 603 F.2d 1038, 1041 (2d Cir.1979), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980).

9. The Supreme Court has mentioned the issue several times in passing. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 1714, 64 L.Ed.2d

333 (1980) termed *Townsend* the "precursor" of 2254(d). In *Wainwright v. Sykes,* 433 U.S. 72, 80, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977), the Court stated:

The duty of the federal habeas court to hold a factfinding hearing in specific situations, notwithstanding the prior resolution of the issues in state court, was thoroughly explored in this Court's later decision in *Townsend v.*

the fifth circuit in *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir.1981) (en banc) held that *Townsend* (including its inexcusable neglect and deliberate bypass corollaries) governs the threshold issue of whether or not to hold a federal evidentiary hearing at all, while section (d) allocates the burdens of proof once a *Townsend* hearing is deemed necessary. The en banc court observed that although in some sense the 1966 amendment "codified" the *Townsend* criteria, "*Townsend* was not completely superseded by the amendment, for the Supreme Court [in *Townsend*] decided when a federal evidentiary hearing is mandatory while the habeas corpus statute, as amended, merely establishes a presumption that the state court judgment is correct unless the applicant establishes one of a number of specific reasons to disregard it." *Id.* at 501.

The sparse legislative history of the 1966 amendment suggests that Congress intended to supplement, rather than supersede, *Townsend.* First, the Report of the Committee on Habeas Corpus, Judicial Conference of the United States, stated that the goal of the amendment was to provide a limited res judicata to state factfindings and that section (d) was "designed to create reasonable presumptions and fix the party on whom the burden of proof, as to certain factual issues, shall rest in such proceedings, but without the impairment of any of the substantive rights of the applicant." Report of the Committee on Habeas Corpus (September 1965), Judicial Conference of the United States, attached to S.Rep. No. 1797, 89th Cong.2d Sess. (1966), 1966 U.S. Code Cong. & Ad.News 3663, 3669, 3671. This report is significant because the legislation had been sponsored and endorsed by the Judicial Conference, *id.* at 3663, and language identical to that quoted above appears in the "Purpose of Amendments" section of H.R.Rep. 1892, 89th Cong.2d Sess. 3 (1966). *See also* Letter from the Honorable Orie Phillips to the Honorable Joseph D.

Tydings (September 24, 1966), *reprinted in* 1966 U.S.Code Cong. & Ad.News 3666, 3666 (noting that the goals of the amendment were to be attained "by provisions with respect to the burden of proof in Federal court proceedings for habeas corpus by State prisoners"). Further, the Senate Judiciary Committee's Report on the amendment, S.Rep. No. 1797, 89th Cong.2d Sess. (1966), 1966 U.S.Code Cong. & Ad.News 3663, 3663 stated that the purpose of the amendment was to revise the "*procedures* applicable to review by lower Federal Courts" of petitions by state prisoners. (emphasis added). *See also* H.R.Rep. No. 1892, 89th Cong. 2d Sess. 3 (1966) (same).

Secondly, the Senate Judiciary Committee's Report, S.Rep. No. 1797 *supra* at 3665, and the House Judiciary Committee's Report, H.R.Rep. No. 1892, *supra* at 9, both noted that section (d) provides "that *at the evidentiary* hearing in the Federal court when proof of the State court's factual determination has been made, unless [one of the eight listed categories is present], the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." (emphasis added). The statement that the eight categories apply "at the evidentiary" hearing suggests that determination of the propriety of having a hearing at all is controlled by *Townsend.*

Thirdly, the language and legislative history of section (d) are silent on the issue of defense sandbagging. The most reasonable explanation for this silence is that the *Townsend* analysis governs whether to hold a hearing (which depends on whether there was deliberate bypass or inexcusable neglect), while section (d) controls the burdens of proof at such hearings. The legislative history of section (d) leaves no doubt that Congress passed the amendment out of a concern for strain on the federal courts caused by a burgeoning number of habeas petitions. *See* H.R.Rep. No. 1892, 89th

---

*Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Congress addressed this aspect of federal habeas in 1966 when it amended § 2254 to deal with the problem treated in *Townsend.* 890 Stat. 1105. See *LaVallee v.*

*Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).
*See also Guice v. Fortenberry,* 661 F.2d at 506 (listing cases suggesting that § 2254(d) "merely codified" *Townsend* ).

Cong. 2d Sess. (1966) 6–7, 18–35 (figures cited in appendices I, II and III); S.Rep. No. 1797, 89th Cong. 2d Sess. (1966), *reprinted in* U.S.Code Cong. & Ad.News 3663–64; Report of the Committee on Habeas Corpus, *supra* at 3670–71. Given this concern, the only reason Congress would remain silent on the sandbagging issue is if it thought the issue had *already* been settled by *Townsend's* deliberate bypass/inexcusable neglect criteria.[10] *But see* Advisory Committee Note to Rule 8 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, effective 1977 (observing that "the standard set down in *Townsend* ... determines *when* a hearing in the federal habeas proceeding is mandatory" (emphasis in original) but also stating that "the circumstances under which a federal hearing is mandatory are now specified in 28 U.S.C. § 2254(d)").

*Townsend* and section 2254(d) complement each other. The 1966 amendment tracks *Townsend,* but "it is not a direct statutory codification of *Townsend*" on the question of whether a district court should hold an evidentiary hearing:

> Though not free from ambiguity, the language of the amendment apparently assumes that the decision to hold an evidentiary hearing has already been made, pursuant either to *Townsend's* mandate or the judge's discretionary power, and attempts to set the burden and standard of proof for that hearing. Indirectly the statutory language and the *Townsend* rules do reinforce each other. If a state judgment is no longer presumed correct under the statute, *Townsend* would seem to require a hearing so the habeas judge can draw the conclusions of fact needed. Conversely, if *Townsend* indicates sufficient unreliability in the state conclusions so that a new hearing is required, it is reasonable to refuse to give weight to the former conclusions in the new hearing.

Developments in the Law-Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1141–42 (1970). *Accord LaVallee v. Rose,* 410 U.S.

690, 702 n. 2, 93 S.Ct. 1203, 1209 n. 2, 35 L.Ed.2d 637 (1973) (Marshall, J., dissenting) (section 2254(d) "says nothing concerning when a district judge may hold an evidentiary hearing—as opposed to acting simply on the state court record ... [T]he question whether such a hearing is appropriate on federal habeas corpus continues to be controlled exclusively by our decision in *Townsend v. Sain*"); *White v. Estelle,* 556 F.2d 1366, 1368 & n. 4 (5th Cir.1977); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1505 & n. 7 (2d ed. 1973) (section (d) "does not purport to define when a federal evidentiary hearing is mandatory; it appears merely to state a set of rather confused burden of proof rules to guide the district courts which are holding such hearings"). *But see United States v. Franzen,* 676 F.2d 261, 268 (7th Cir.1982) (Posner, J. concurring) (arguing that "*Townsend* was a product of its time," that "times have changed" and that it is "doubtful" that *Townsend* would be decided the same way today, but that section 2254(d) "unintentionally ... froze the standard laid down in *Townsend v. Sain* against any change of mind (which was not then foreseen) by the Supreme Court, until such time as Congress itself should amend or repeal the statute"); 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4265 (1978) (while observing that the statute "apparently assumes that the decision to hold an evidentiary hearing has been made," argues that the "best view" is that Congress merely codified *Townsend* ).

The end result of the burdens set up by Congress in the 1966 amendment may be summarized:

> When one or more of the eight statutory factors applies, the state's factual conclusions are no longer statutorily presumed correct; it does not follow that the state's conclusions, if such were made, are presumed to be incorrect and that the state has the burden of proving that petitioner is not unconstitutionally confined. Rath-

---

**10.** Neither the language nor the legislative history of the 1966 amendment state whether

Congress intended to ratify the deliberate bypass standard of *Fay.*

er, any presumption of correctness simply drops out of the picture, and the traditional rules as to burden and standard of proof continue. For example, the petitioner must show by a preponderance of evidence that an unlawful search and seizure occurred. Once he makes a prima facie case for unlawfulness, the state in rebuttal may attempt to prove with a preponderance of evidence that the petitioner consented to the search. If unsuccessful, the state must prove beyond a reasonable doubt that the admission of the unlawfully seized evidence was harmless error.

Developments in the Law *supra* at 1142 (footnotes omitted). Further, the presumption of correctness can always be rebutted by "convincing evidence."

■ Thus a federal habeas petitioner must make a showing of two elements in order to obtain an evidentiary hearing based on the fifth circumstance of *Townsend*: first, that a fact pertaining to his federal constitutional claim was not adequately developed at the state court hearing and that the fact was "material" (in the language of section (d)(3)) or "crucial to a fair, rounded development of the material facts" (in the language of *Townsend*);[11] second, that failure to develop that material fact at the state proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass. Either of these may itself require an evidentiary hearing. A demonstration of both elements entitles a petitioner to an evidentiary hearing on the substance of his federal claim, the burdens of proof of which are allocated by section 2254(d). The state factfindings will receive presumptive correctness unless petitioner can make a prima facie showing that he comes within one of the eight listed categories. If the petitioner can make such a showing, then the presumption no longer applies and petitioner has the burden of

proving, by a preponderance of the evidence, the facts supporting his substantive federal claim. Even if the presumption applies at the *Townsend* hearing on the merits of the federal claim, the petitioner must be granted an opportunity to rebut it by convincing evidence.

■ The above structure of analysis, when applied to the facts of the present case, yields the conclusion that a federal evidentiary hearing is required at least on the threshold issue of deliberate bypass/inexcusable neglect. The existing record demonstrates that Thomas has made a clear showing on the first of the *Townsend* elements, a fact pertaining to his constitutional claim was not adequately developed at the state court level. In an allegation of ineffective assistance of counsel, nothing could be more "indispensible to a fair, rounded development of the material facts," *Townsend v. Sain*, 372 U.S. at 321–22, 83 S.Ct. at 762, than counsel's testimony concerning her strategy at trial. In *Washington v. Strickland*, 693 F.2d 1243, 1254 (5th Cir.1982) (Unit B en banc), we noted the central role of counsel strategy in our assessment of effectiveness of representation: "When an attorney makes a strategic choice after satisfying [the] rigorous and extensive duty to investigate, courts will seldom if ever find that the choice was the result of ineffective assistance of counsel." Because often it will "not be clear whether the failure to investigate a line of defense is based upon trial strategy or upon neglect of counsel's professional obligations," courts presume that counsel's actions are strategic. *Id.* at 1257. We noted that "this presumption can be rebutted, however, when trial counsel testifies credibly at an evidentiary hearing that his choice was not strategic." *Id.; see, e.g., Kemp v. Leggett*, 635 F.2d 453, 454 (5th Cir.1981) (counsel by affidavit admitted that he was not competent to handle a murder case); *Nero v. Blackburn*, 597

---

11. This "materiality" requirement is not toothless. In *Folston v. Allsbrook*, 691 F.2d 184 (4th Cir.1982), the court stated: "The state court's finding of no discrimination is fully supported by the record. This would remain the case even if Folston had introduced

evidence as to the percentage of women in the county; thus, the fact is not 'crucial to the adequate consideration of the constitutional claim,' as is required under the *Townsend* exception for material facts."

F.2d 991, 994 n. 5 (5th Cir.1979) ("Nero's attorney stated that he was a civil attorney with very little criminal experience and at the time of trial he was not aware of Nero's right to a mistrial"); *Marzullo v. Maryland,* 561 F.2d 540, 547 (4th Cir.1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) ("at the post-conviction hearing, Marzullo's attorney made no claim that his decision not to challenge the jury was a trial tactic"). Further, a decision based on reasonable strategy would constitute deliberate bypass so as to negate the need for an evidentiary hearing under *Townsend. See Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), quoted at note 5 *supra;* Wright & Sofaer, Federal Habeas Corpus for State Prisoners: The Allocation of Factfinding Responsibility, 74 Yale L.J. 895, 969 (1966) ("when a bypass ruling is possible, it will be necessary for the district court to determine whether the forfeiture imposed by the state courts followed from a tactical choice or other deliberate action"). An attorney's decisions on strategy at trial may bind his client even when such decisions are made without consultation. *See, e.g., Coco v. United States,* 569 F.2d at 371; *Aaron v. Capps,* 507 F.2d at 690–92.

Although the state habeas court concluded that trial counsel's failure to present any evidence during the penalty phase of the trial was "an apparent tactical decision", that determination was made in the absence of any direct evidence as to what trial counsel's strategy actually was and as to whether counsel's decision was reasonable.[12] Thomas' state habeas counsel challenged the effectiveness of his predecessor by producing character witnesses who stated that they could have testified at the penalty phase of the trial, but that trial counsel never contacted them.[13] Because trial counsel never contacted them, these witnesses could not and did not testify about

trial counsel's strategy. In *Baldwin v. Blackburn,* 653 F.2d 942, 947 (5th Cir.1981), we noted that "this court has remanded for an evidentiary hearing when it could not conclusively determine from the record the accuracy of a petitioner's allegations of ineffective assistance." *Accord Guice v. Fortenberry,* 661 F.2d 496, 508 (5th Cir.1981) (en banc) ("The need for an evidentiary hearing becomes even more evident when we consider the limited evidence presented in state court . . . ."); *Clark v. Blackburn,* 619 F.2d 431, 434 (5th Cir.1980) ("The district court should hold a full hearing on any issues not resolved because of an insufficient record. Ultimately, the final determination of whether or not counsel rendered reasonably effective assistance of counsel requires an inquiry into counsel's actual performance. That review must be based on an adequate record . . . ."); *Cannon v. Montanye,* 486 F.2d 263, 268 (2d Cir.1973), *cert. denied,* 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974) ("the record on a significant factual question is sparse. Under these circumstances, we decline to decide the ultimate issue of taint"). In *McNair v. New Jersey,* 492 F.2d 1307, 1309 (3d Cir. 1974), the third circuit expressed the vexing problem we face with Thomas' petition for habeas relief:

> When legal problems are presented which are not easily resolved even on the basis of clearly established facts, an evidentiary hearing is an *a fortiori* proposition if the state record is deficient in critical areas. There is no need here to make the task more difficult by struggling with a self-imposed blackout of relevant matters.

Now Thomas comes into federal court with yet new counsel and with a crucial piece of evidence not presented earlier at any hearing. The evidence which Thomas sought to present to the district court bore

---

12. This places the case in marked contrast, in this regard, to cases such as *Mason v. Balkcom,* 531 F.2d 717, 722 n. 10 (5th Cir.1976) ("all the relevant witnesses testified extensively at the state hearing"); *West v. Louisiana,* 478 F.2d 1026, 1031 (5th Cir.1973) (same).

13. Four people testified on Thomas' behalf at the state hearing: his parents, an older brother and an older sister. The specific issue of trial counsel's strategy did not come up at the hearing.

directly on the issue of counsel's trial strategy. In fact, the affidavit of Thomas' trial attorney came very close to admitting that she had had no strategy at all for the penalty stage of Thomas' capital trial:

There were two parts to Joseph Thomas' trial. During the guilt/innocence part of the trial, I put up evidence and tried the case on the issue of Joseph Thomas' innocence.

I did not prepare for the penalty phase of the trial, nor did I investigate or interview witnesses for the penalty phase of Joseph Thomas' trial. I made no preparation or presentation of any mitigation circumstances.

Thomas contends that the affidavit proves that his trial attorney's actions and inactions during the penalty phase were not based on tactical decisions but rather were the result of a complete failure to investigate or prepare. The affidavit is, at the very least, sufficient to meet the portion of the *Townsend* criteria requiring that the evidence sought to be presented in the federal evidentiary hearing be material to the disputed legal issue involved. We do not deem the affidavit conclusive on the strategy issue, although we doubt that the state habeas court would have decided the strategy question the same way had it had access to the affidavit.

Before Thomas is entitled to an evidentiary hearing on the merits of his ineffectiveness of trial counsel claim and the underlying factual issues of trial strategy, he must also show the district court, by evidence, that the second of the *Townsend* requirements is met in his case. He must demonstrate that the failure to present the testimony of trial counsel at the state habeas proceeding was not due to Thomas' inexcusable neglect or deliberate bypass.[14]

The present record contains no direct evidence of why trial counsel was not called to testify at the state habeas proceeding. The district court must hold an evidentiary hearing on whether failure to offer trial counsel's affidavit or testimony was due to the inexcusable neglect or deliberate bypass of Thomas. *See Buckelew v. United States,* 575 F.2d 515, 519 (5th Cir.1978) ("in most cases, a deliberate bypass must itself be proved by an evidentiary hearing, unless it is clearly shown on the record, as when the trial transcript reveals an express waiver of the issue by defense counsel"); *Coco v. United States,* 569 F.2d 367, 370 (5th Cir. 1978) ("Normally, where serious and fundamental rights are involved and the section 2255 motion is denied on a deliberate bypass theory, the district court must base its decision on facts developed at an evidentiary

---

**14.** Thomas contends that the pivotal testimony was not presented because his court appointed state habeas counsel was as ineffective as his earlier trial attorney. Thomas argues that the default by his habeas counsel cannot be attributed to him because he was indigent, incarcerated, wholly dependent on his court-appointed counsel. Thomas referred this court to an argument he made to the district court that the organization representing him at the state habeas proceeding lacked the resources to investigate and present his case effectively. Thomas was represented at the first state habeas proceeding by the Prisoner's Legal Counseling Project (PLCP), a small organization based at the University of Georgia Law School. Thomas argues that PLCP is "ridiculously overburdened by a large caseload and voluminous requests for assistance by incarcerated persons in all the state penal institutions. All that PLCP can hope to do is present short petitions containing only the most obvious issues readily apparent from a cursory review of transcripts. They are not equipped to handle an in-depth review of the case nor are they trained in the

complex issues involved in death penalty cases."

Thomas also asserted that representatives of the state of Georgia had been pressuring PLCP to cease representing capital prisoners. At the same time that he moved to admit his trial counsel's affidavit into evidence, Thomas moved to depose the director of PLCP, in addition to his trial counsel and his state habeas counsel. Finally, Thomas contends that he "could not even subpoena his trial counsel whose ineffectiveness was alleged." Ga.Code § 38–801(d) requires the tender of a witness fee of ten dollars and mileage fee of twenty cents per mile with the service of a subpoena for the attendance of a witness. Thomas asserts that he could not afford these fees and, consequently, that the only witnesses he could present at his state habeas corpus hearing were family members who appeared and testified voluntarily. The record does not reveal whether Thomas did in fact attempt to secure the testimony or affidavit of trial counsel for the state proceeding.

hearing"); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir.1981) ("Unless the record clearly establishes a deliberate bypass of the direct appeal, the issue requires an evidentiary hearing"); Developments in the Law, *supra* at 1130 ("In many cases [the] *Fay* [issue] will require its own evidentiary hearing").

The district court's disposition of the deliberate bypass/inexcusable neglect issue will determine whether there is a need for a further evidentiary hearing on the merits of Thomas' ineffectiveness of trial counsel claim. If the district court concludes initially that Thomas did not waive the right to present the evidence or that failure to present the evidence did not result from deliberate bypass or inexcusable neglect, then Thomas is entitled to a further evidentiary hearing on the merits of his trial counsel effectiveness claim. At that subsequent hearing Thomas comes under section 2254(d)(3), and the state factfinding on the strategy issue is not entitled to a presumption of correctness.[15] The affidavit of trial counsel more than meets the prima facie requirements of section (d): it is a "material" piece of evidence, if not *the* most material piece of evidence, on the crucial issue of trial strategy, and the evidence was not "adequately developed at the state court hearing." Since the statutory presumption is not operative, the standard of proof on the issue of ineffectiveness is preponderance of the evidence. *See Walker v. Johnston*, 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830 (1941) (habeas petitioner has the "burden of sustaining his allegations by a preponderance of the evidence"); *Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938) (prisoner seeking federal habeas must prove by preponderance of the evidence that he did not waive right to counsel); Developments

in the Law, *supra* at 1140. The preponderance of the evidence standard would control at the hearing on effectiveness of trial counsel.

REVERSED and REMANDED.

FAY, Circuit Judge, specially concurring:

I concur in the result reached in Judge Vance's scholarly opinion based on the precedent of *Guice v. Fortenberry*, 661 F.2d 496 (5th Cir.1981) (en banc). However, I personally still adhere to the views expressed by Judge Reavley's dissenting opinion in *Guice*. Unfortunately we are trying to accommodate and reconcile conflicting authorities. It seems to me that the principles of comity and federalism are paramount and straightforward. Federal courts should not be required to hold hearings nor be asked to grant relief based upon evidentiary material which has never been presented to the state courts when the state courts afford procedures by which the evidence could have been considered.

---

**15.** We need not reach the issue governed by *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). *See also In re Wainwright*, 678 F.2d 951 (11th Cir.1982); *Germany v. Estelle*, 639 F.2d 1301 (5th Cir.), *cert. denied*, 454 U.S. 850, 102 S.Ct. 290, 70 L.Ed.2d 140 (1981). The *Mata* analysis is not triggered unless a habeas petitioner is unable to come within one of the first seven categories of 28 U.S.C. 2254(d). In *Mata,* itself, the factual record was

complete, 449 U.S. at 549, 102 S.Ct. at 767, and it was "clear that the court [granting the writ] could not have even implicitly relied on paragraphs 1 through 7 of § 2254(d) in reaching the decision." *Id.* at 770. By contrast, Thomas contends that he comes within § 2254(d)(3). *Accord Rivera v. Harris*, 643 F.2d 86, 97 n. 15 (2d Cir.), *reversed on other grounds*, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981).