Robert L. STREETMAN,
Petitioner-Appellant,

v.

James A. LYNAUGH, Interim Director,
Texas Department of Corrections,
Respondent-Appellee.

No. 86–2319.

United States Court of Appeals,
Fifth Circuit.

March 9, 1987.
Rehearing and Rehearing En Banc
Denied April 29, 1987.

Will Gray, Houston, Tex., for petitioner-appellant.

William C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

In this capital case, the petitioner Robert Streetman appeals from the district court's dismissal of his petition for writ of habeas corpus, 634 F.Supp. 290. Finding that the facts relevant to Streetman's ineffective assistance of counsel claim have not been adequately developed, we reverse and remand for an evidentiary hearing in order to permit the full development of material facts.

I.

Christine Baker was fatally shot during a burglary of her home on December 17, 1982. Two days later, on December 19, 1982, law enforcement officials arrested Robert Streetman, Johnny Johnson, David Kirkendoll, and Gary Holden in connection with a series of thefts of agricultural equipment. While interrogating the four theft suspects, officials discovered that the men had also been involved in the Baker killing. Later that evening and early the following morning, Streetman gave statements and signed a written confession implicating himself as Baker's killer.[1] Hol-

---

1. Streetman's statements also implicated him in a series of thefts. Later, during the course of his pretrial detention, Streetman gave state- ments to law enforcement authorities regarding his involvement in several other extraneous offenses. These statements were introduced dur-

den and Kirkendoll also gave statements detailing their involvement and identifying Streetman as the triggerman in the murder.

All four men were indicted for capital murder. Of the four, however, only Streetman was eventually tried for and convicted of capital murder. In exchange for his testimony at Streetman's trial, Holden received ten years' probation. Kirkendoll, in exchange for a plea agreement and his promise to testify, received a sentence of forty-five years in the Texas Department of Corrections. Authorities granted Johnson immunity. Neither Johnson nor Kirkendoll personally testified during Streetman's trial although the State read Kirkendoll's statement to the jury.

The state trial judge initially appointed Michael S. McNeely to represent Streetman. McNeely was inexperienced in handling contested criminal cases and had never before tried a death penalty case. Because of his lack of experience, McNeely requested the trial judge to appoint an experienced attorney to assist in preparing and trying the case. In response to McNeely's request, the trial judge appointed Robert S. Coe, who eventually served as de facto lead counsel at trial.

At the guilt stage of Streetman's trial, the State presented only four witnesses: Ralph Osborne, the Chief Deputy Sheriff of Hardin County, Texas; Nile Henry Baker, the victim's husband; Gary Holden; and Clint Parr, a friend of Streetman. The State's first witness, Deputy Sheriff Ralph Osborne, testified on direct examination regarding his investigation of the Christine Baker murder. Osborne's testimony focused on finding Baker's body and determining from the physical evidence at the scene that she had been murdered. On cross-examination, defense attorney Robert Coe solicited testimony from Deputy Osborne indicating that Streetman, Holden and Kirkendoll had each signed statements giving consistent accounts of the Baker murder and admitting their involvement.

Q. (By Coe): That means, I guess in your opinion, that from your investigating the penalty phase of Streetman's capital

tion that all four of these people, that you had reason to believe that they're all guilty of capital murder?

A. (Osborne): I couldn't arrive at that, that they were all guilty of murder. Like I say, they was (sic) all charged with it, yes, sir.

Q.: Well, I mean, you had a pretty good idea excluding Johnny Johnson when all three of them said they did it and signed written statements either to you or to the Sheriff's office in the investigation; you'd have a pretty good idea if they signed written statements that they did?

A.: That's correct, yes, sir.

Q.: Did all three of those people sign an indictment—I mean a voluntary statement?

A.: Yes, sir, they did.

Q.: Within those statements, did they all admit their guilt, that they were involved in the killing of Mrs. Baker?

A.: That's correct, yes, sir.

. . . . .

Q. (By Coe): Now, I'm not asking you if they're worded just a like (sic), but in general, all of the written statements are similar in that they're all talking about that the three of them was (sic) involved in it and as far as you could determine, it (sic) really wasn't any conflict between Holden, Streetman, Kirkendoll or any of them? I mean, the statements all pretty well gives (sic) the same information, don't it (sic)?

A. (Osborne): That's correct. The four of them were kept separate at all times and of the three statements, they are similar, yes, sir.

Q.: I mean, you didn't find one different from the other one to make you believe one was lying and the other one was lying or anything?

A.: That's correct.

In response to a question by defense attorney Coe regarding why only Streetman was being tried for capital murder, Osborne testified that Streetman "told me personally that he [had] shot the lady."

murder trial.

Coe solicited this testimony despite the fact that a written pretrial motion to suppress any statements by Streetman had been filed and taken under advisement by the trial court. As a result of Coe's cross-examination of Deputy Osborne, the State was never required to actually introduce Streetman's confession into evidence. In addition, because attorney Coe had opened the door for—indeed elicited—the admission of Kirkendoll's written confession, the State on redirect examination of Osborne introduced Kirkendoll's full statement into evidence. Thus, it was not necessary for Kirkendoll to testify in person, and he did not do so.

Following Deputy Osborne's testimony, the State called three additional witnesses. The State's second witness, Nile Baker, testified regarding the events of the night his wife was murdered. Mr. Baker, who had been away from home much of that evening, did not actually witness either the burglary or murder. The State's third witness, Gary Holden, who was a participant, testified that although he had not actually witnessed the killing, Streetman had admitted shooting Baker during a conversation the following day. The State's final witness, Streetman's friend Clint Parr, also testified that Streetman had admitted during a conversation the day after the murder to "having shot a woman." Although defense attorney Coe cross-examined each State witness, he declined during the guilt phase of the trial to call any defense witnesses on behalf of Streetman.

The jury found Streetman guilty of murder and, after hearing evidence on punishment, returned affirmative answers to the special issues submitted pursuant to Tex. Code Crim.Proc.Ann. art. 37.071 (Vernon 1981).[2] Consequently, on August 10, 1983, the trial judge sentenced Streetman to death by lethal injection. On direct appeal, the Texas Court of Criminal Appeals af-

firmed both Streetman's conviction and sentence. *See Streetman v. State*, 698 S.W.2d 132 (Tex.Crim.App.1985) (J. Teague).

Streetman's execution was originally scheduled to take place on February 6, 1986. On February 3, 1986, Streetman, now represented by different counsel, filed an application for a writ of habeas corpus in state district court. At the same time Streetman moved to withdraw and recall the warrant of execution. In his state habeas corpus petition, Streetman asserted that he received ineffective assistance of trial and appellate counsel. Streetman's state habeas corpus petition focused principally on Coe's conduct during the guilt stage of Streetman's trial.

The state district court ordered an evidentiary hearing on Streetman's writ application (filed February 3, 1986) to be held the next day on February 4, 1986. At the outset of the hearing, Streetman's habeas counsel moved for a continuance arguing that additional preparation was necessary in order to conduct a meaningful hearing. Specifically, Streetman's attorney argued that he needed time to subpoena witnesses and to discuss matters outside the record with his client. Streetman's attorney stated that he had been contacted regarding the case only a few days earlier, on January 29. The court nevertheless denied the motion concluding that counsel had had a sufficient opportunity to prepare. The court cited the fact that Streetman had signed the habeas corpus application several days earlier, on January 29, 1986.

Both of Streetman's trial attorneys (Coe and McNeely) testified at the state evidentiary hearing. Attorney Coe testified that after discussing the case with Streetman and Streetman's family he determined that no basis existed for challenging the validity

2. The three questions submitted to the jury under article 37.071 were as follows:

(1) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

of Streetman's confessions. Based on Streetman's confessions and the statements made by Kirkendoll and Holden, Coe concluded that Streetman was certain to be found guilty of murder. Coe testified that this conclusion led him to adopt a trial strategy intended to: focus on reducing punishment by emphasizing the lesser punishment received by Streetman's equally guilty accomplices; disrupt the prosecution by bringing out the most damaging evidence in its least prejudicial form; establish that the victim and her husband were involved in criminal activities thereby lessening jury sympathy for the victim; and emphasize that Streetman had had a troubled and disadvantaged life and was deserving of sympathy. Attorney Coe's co-counsel McNeely, in contrast, testified that he thought Streetman might be acquitted. In particular, McNeely testified that his investigation revealed that Streetman's confessions were involuntary—thus were inadmissible.

Following the evidentiary hearing, the state district court denied Streetman's application for a writ of habeas corpus. Streetman then applied to the Texas Court of Criminal Appeals for a stay of execution and writ of habeas corpus. Because a statement of facts from the state district court could not be transcribed before Streetman's scheduled execution, a temporary stay of execution was granted. Six weeks later, on March 17, 1986, a divided Texas Court of Criminal Appeals denied Streetman's application without written order. Judge Teague, the judge who had authored the Court of Criminal Appeals' initial opinion affirming Streetman's conviction on direct appeal, dissented, concluding that Streetman had received ineffective assistance of trial counsel. Simultaneously with its denial of Streetman's application, the Texas Court of Criminal Appeals withdrew its order staying Streetman's execution. On April 3, 1986, the state district court signed a new warrant of execution, ordering Streetman's execution before sunrise on May 8, 1986.

On April 25, 1986, Streetman proceeded to file an application for writ of habeas corpus and stay of execution in federal district court. In addition to challenging counsels' conduct of the trial proceedings, Streetman's federal habeas corpus petition focused on trial counsels' failure to adequately investigate the admissibility of Streetman's confessions. Several days later, Streetman filed a motion requesting an evidentiary hearing. The federal district court held a preliminary hearing on May 2, 1986, to consider the need for a full evidentiary hearing. At the preliminary hearing, Streetman's habeas counsel asserted that facts regarding the voluntariness of Streetman's statements and his trial counsels' failure to investigate those confessions were not developed at the state hearing. Streetman's habeas attorney assured the federal district court that if granted an evidentiary hearing, he would produce several witnesses who would present material evidence not introduced at the state hearing. The federal district court nevertheless denied Streetman's motion for an evidentiary hearing, denied the application for habeas corpus, denied the motion for certificate of probable cause, and denied Streetman's motion for a stay of execution.

Streetman gave oral notice of appeal. On appeal, Streetman sought an order staying his execution, scheduled before sunrise on May 8, 1986, and an order remanding this cause to the federal district court for a full and complete evidentiary hearing on his ineffective assistance of counsel claims. On May 6, 1986, this Court entered an order granting Streetman's application for a certificate of probable cause and granting a stay of execution pending further order by this Court.

## II.

Streetman contends that his trial attorneys were ineffective in failing to discover that Streetman's statements to authorities were inadmissible and in failing to urge suppression of those statements. According to Streetman, his trial attorney's failure to adequately investigate the statements led to their prejudicial trial strategy which was based on the assumption that the statements were admissible and that

Streetman would be found guilty.[3] Two factual inquiries critical to Streetman's ineffective assistance claim are: (1) whether Streetman's various statements to authorities were in fact improperly obtained; and if so, (2) whether reasonable investigation by trial counsel would have uncovered the inadmissibility of the statements.

With regard to the first inquiry, Streetman urges that he is now able to produce evidence indicating that the statements he gave authorities and which were subsequently used at his trial were inadmissible. According to Streetman, he was given valium by Deputy Osborne shortly after his arrest and continued to receive valium as long as he cooperated. Streetman alleges that he was under the influence of valium at the time he gave statements indicating involvement in various extraneous offenses. As heretofore stated, the State introduced these statements during the penalty stage of Streetman's trial. Streetman further alleges that he gave his initial statement admitting involvement in a series of thefts only after he and his family were physically threatened by Hardin County Sheriff Mike Holzapfel and Sheriff's Captain Jimmy Butler. Streetman alleges that he confessed to murdering Baker only after he received promises from Deputy Osborne that the authorities were really after Johnny Johnson and that Streetman would be released and "home for Christmas" if he confessed to the murder. Deputy Osborne also allegedly promised Streetman that nothing Streetman said would be used against him. According to Streetman, members of his family witnessed and heard some of these improper inducements to confess.

With regard to the second inquiry, Streetman contends that reasonable inquiry by his trial attorneys would have revealed that the confessions were inadmissible. Attorney McNeely testified at the state evidentiary hearing that information provided by Streetman and his family indicated that Streetman's confessions were inadmissible. McNeely testified that he filed a written motion to suppress the confessions and "distinctly remember[ed] at some point that the judge said that the confessions were not going to be admitted." McNeely further testified that he was prepared to reurge the motion to suppress if necessary and was "as surprised as anyone" when co-counsel Coe *himself* brought Streetman's confession before the jury. Coe on the other hand testified that Streetman failed

> to name any reason in [Coe's] opinion that would make [the statements] inadmissible. He [Streetman] said how well he was treated; how the officers treated him; how members of his family was [sic] present and that [the statements were] true, and he made no complaint about it.

Streetman alleges that he spent less than an hour before trial with attorney Coe, did not like Coe, and had nothing to say to him. Thus, it is possible that Streetman told attorney McNeely of facts suggesting the statements were inadmissible, but at the same time refused to inform Coe of the same facts.[4] It is unclear whether Coe ever "compared notes" with McNeely in planning trial strategy. The state district court made no finding on this point. Coe testified that he did discuss trial strategy with McNeely. McNeely, in contrast, testified that Coe was either too tired or busy to discuss the case. Attorney Coe testified

**3.** Streetman's federal habeas corpus petition also alleged that his trial counsel's overall performance was so deficient that prejudice should be presumed under the standard enunciated in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). This was the principal argument raised in Streetman's state habeas corpus application. Judge Teague's dissent from the Texas Court of Criminal Appeals decision denying Streetman's claim for relief found this argument persuasive. Given our disposition of Streetman's argument that a federal evidentiary hearing is required, we need not determine at this point in the proceedings the applicability of *Cronic.*

**4.** Attorney Coe further testified that had Streetman been put on the stand at a suppression hearing Streetman would have testified that he was guilty and asked for the death penalty. In his motion for an evidentiary hearing, Streetman specifically alleges that Coe's testimony in that regard was not true.

that he was unaware of the motion to suppress filed by McNeely.

Much of the foregoing evidence, particularly that portion alleged by Streetman, was not introduced at the state evidentiary hearing. According to Streetman's habeas attorney, he (the habeas attorney) had been unable to discuss matters not contained in the record with Streetman or his family prior to that hearing. In addition, until February 28, 1986, Streetman had expressed a desire to be executed. Streetman's habeas counsel avers that he was contacted only after that date and had less than a week to review the record and file a petition. Thus at the time of the state evidentiary hearing, the habeas attorney was unaware of much of the evidence now in his possession regarding the admissibility of the confessions and the reasonableness of trial counsel's investigation. Streetman's habeas counsel further avers that if this Court orders an evidentiary hearing, he will produce several witnesses with pertinent information including members of Streetman's family, law enforcement officials involved in the interrogations, attorney McNeeley and possibly Streetman.

## III.

Streetman bears the burden of establishing the need for a federal evidentiary hearing. In evaluating whether Streetman has met that burden, our initial task is to "determine whether [his] allegations, if proved, would establish the right to habeas relief." *Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). As noted earlier, Streetman's principal claim is that his trial attorneys were constitutionally ineffective in failing to investigate and obtain suppression of his confessions.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining the effectiveness of counsel's performance:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

*Id.* Under *Strickland,* counsel's performance is deficient only if it falls below an objective standard of reasonableness as informed by prevailing professional standards. *Id.,* 104 S.Ct. at 2065. Once deficient performance is established, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* A defendant need not, however, establish that "counsel's deficient conduct more likely than not altered the outcome of the case." *Id.*

Streetman must establish that one or more of his various confessions were inadmissible in order to show either deficient performance or prejudice. As detailed above, Streetman alleges that he confessed to killing Baker and committing a series of thefts only after authorities threatened him and his family with physical violence, assured him that information provided would not be used against him, and promised that they were really after Johnny Johnson and that Streetman himself would be promptly released. Streetman further alleges that statements regarding various other extraneous offenses were obtained only after authorities promised to continue to supply valium in exchange for Streetman's cooperation.

■ In *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897), the Supreme Court stated that the test for determining the voluntariness of a confession

> is whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.

*See also Hutto v. Ross,* 429 U.S. 28, 31, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976). Under *Bram,* police threats to an accused or his family render a resulting confession involuntary. *See Rogers v. Richmond,* 365 U.S. 534, 545, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961) (defendant's confession coerced when obtained in response to a police threat to take defendant's wife into custody); *Leon v. Wainwright,* 734 F.2d 770, 772 (11th Cir.1984) (statement obtained by police threats and physical force clearly not admissible). Similarly, certain promises, if not kept, are so attractive that they render a resulting confession involuntary. *See, e.g., United States v. Shears,* 762 F.2d 397, 402 (4th Cir.1985). A promise of immediate release or that any statement will not be used against the accused is such a promise. Finally, threats of violence prior to one statement may preclude admitting subsequent statements into evidence if the coercion surrounding the first statement had not dissipated at the time of subsequent statements. *United States v. Bayer,* 331 U.S. 532, 541, 67 S.Ct. 1394, 1398–99, 91 L.Ed. 1654 (1947). Under these principles, Streetman's allegations, if true, establish the very sort of official overbearing found by the Supreme Court to violate the due process voluntariness requirement.

Streetman must also establish that his confessions were critical to the State's case. This requirement presents no difficulty here. As recognized by the Texas Court of Criminal Appeals on direct review of Streetman's conviction, the single most damaging item of evidence against Streetman was Deputy Osborne's testimony that

Streetman had confessed to shooting Baker. *See Streetman v. State,* 698 S.W.2d 132, 136 (Tex.Crim.App.1985). The state prosecuting attorney admitted as much during the state evidentiary hearing by suggesting that without the confession he had a weak case. The second most damaging item of evidence was the testimony of Streetman's friend, Clint Parr. The police learned of Parr, however, only during one of Streetman's statements now alleged to have been improperly obtained. The only remaining evidence linking Streetman to the Baker killing consisted of accomplice witness testimony which under Texas law requires independent corroboration to support a conviction. *See* Tex.Code Crim.Proc. Ann. art. 38.14 (Vernon 1979 & 1986 Supp.).[5] Thus, if Streetman's statements had been excluded, there exists a reasonable probability that the outcome of his trial would have been different. *See Smith v. Wainwright,* 777 F.2d 609 (11th Cir.1985) (extreme prejudice occurred where inadmissible confessions provided the primary evidence offered).

■ Finally, Streetman must establish that his trial attorneys rendered deficient performance in failing to press for suppression of the statements, instead adopting a trial strategy designed to concede guilt. Attorney McNeely's undisputed testimony was that Streetman and various members of Streetman's family told him of facts which led him to conclude that the statements were involuntary. Even if attorney Coe was not informed of these allegations by Streetman, McNeely's failure, as Streetman's attorney, to press the motion to suppress and to inform attorney Coe of Streetman's allegations rendered trial counsel's performance deficient. This is especially true considering the importance of Streetman's confessions to the State's case against him. We conclude that Streetman has alleged facts which, if proven, would establish his ineffective assistance of counsel claim.

---

5. Article 38.14 provides that:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

## IV.

 Alleging such facts establishes the federal court's power to conduct an evidentiary hearing. The exercise of that power is mandatory, however, only "if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral proceeding." *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 747, 9 L.Ed.2d 770 (1963). No "full and fair" evidentiary hearing has occurred if "the material facts were not adequately developed at the state court hearing." *Id.* Material facts are those facts crucial to a fair, rounded consideration of a petitioner's claim.[6] *Id.* at 317, 83 S.Ct. at 759; *see also Thomas v. Zant*, 697 F.2d 977, 986 n. 11 (11th Cir. 1983). Material facts have not been "adequately developed" where the petitioner alleges undeveloped evidence sufficient to call into question the "reliability" of the state court's determination of petitioner's federal claims.

 We have little difficulty concluding that the facts regarding the voluntariness of Streetman's various statements were not adequately developed at the state evidentiary hearing. Little if any testimony at that hearing was directed towards the measures taken by officials to secure Streetman's confessions. Local officials involved in interrogating Streetman did not testify. Neither did Streetman nor those members of his family who allegedly witnessed official misconduct. Streetman's habeas counsel avers that he will produce some or all of these witnesses if granted a federal evidentiary hearing.

The State argues that even if facts regarding the voluntariness of Streetman's confessions were not adequately developed, those facts are immaterial. According to the State, the state district court reliably found that Streetman's trial attorneys conducted a reasonable investigation and determined that Streetman's confessions were voluntary and admissible at trial. The State relies on attorney Coe's testimony that neither Streetman nor his family provided any information to indicate that the confessions were inadmissible. The State concludes that since Streetman's attorneys could properly rely on information provided by Streetman, the attorneys did not render ineffective assistance even if the confessions were in fact inadmissible.

 Implicit in the State's analysis is the conclusion that the facts regarding whether Streetman's trial attorneys conducted a reasonable investigation were adequately developed at the state evidentiary hearing. We cannot accept that conclusion. At the state evidentiary hearing Streetman's two trial attorneys, Coe and McNeely, gave conflicting testimony about what information was provided by Streetman regarding his confessions. Little effort was devoted at that hearing to uncovering (1) what precise information each attorney received from Streetman and Streetman's family; (2) what exchange of information, if any, occurred between the attorneys; and (3) whether the trial strategy adopted by Coe was ever discussed with McNeely. Neither Streetman nor any of his family members testified at that hearing regarding the information they provided to Streetman's trial attorneys. This missing testimony could prove critical in resolving inconsistencies in the habeas testimony of Streetman's attorneys. We also emphasize that Streetman had not one but two trial attorneys. McNeely testified that he did, in fact, learn of facts indicating that Streetman's confessions were involuntary. Upon learning of these facts, McNeely filed a pretrial suppression motion, a motion which was, apparently, never ruled on by the state trial judge before Coe, himself, introduced Streetman's confessions into evidence. If McNeely's testimony is accurate, his failure to inform Coe of those facts as well as

---

6. In *Townsend,* the "crucial fact" not disclosed by experts testifying at the state suppression hearing was that the substance injected into Townsend prior to his confession had "properties which *may* trigger statements in a legal sense involuntary." *Id.,* 372 U.S. at 321, 83 S.Ct. at 761 (emphasis added). Thus, the undisclosed evidence would not necessarily have entitled the petitioner to relief if true. Nevertheless, it was crucial to a fair consideration of Townsend's constitutional claim.

his failure to have the pretrial suppression motion he had filed acted upon would itself constitute deficient performance, independent of Coe's conduct. This is especially so given the central role of Streetman's confessions in the State's case.

Given the ambiguities in that little testimony which was presented regarding the trial attorneys' failure to press for suppression of Streetman's confessions, the volume of critical testimony never presented at the state habeas corpus hearing, and McNeely's uncontradicted testimony regarding his own knowledge and actions, we must conclude that facts crucial to a fair, rounded consideration of Streetman's claim are sufficiently undeveloped to call into question the reliability of the state court's decision rejecting Streetman's ineffective assistance claims. No doubt the failure to develop these facts was due to Streetman's inability to fully articulate his ineffective assistance of counsel theories at that stage of the proceedings. Streetman's habeas attorney was, at that time, focussing on Coe's trial conduct rather than Coe's failure to adequately investigate the case. Ordinarily, such a failure would lead us to conclude that Streetman had failed to exhaust state remedies. *See, e.g., Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir.1986). Here, however, the State has expressly waived the exhaustion requirement, as it is permitted to do. *See Gibson v. Klevenhagen*, 777 F.2d 1056, 1058 n. 3 (5th Cir.1985).[7]

## V.

■ Nevertheless, even where material facts were not adequately developed at the state evidentiary hearing, no federal hearing is required if the failure to develop the evidence was the result of inexcusable neglect by the petitioner. *See Townsend*, 372 U.S. at 317, 83 S.Ct. at 759. In applying this inexcusable neglect standard,

Courts must exercise great caution. The essential purpose served by habeas corpus is to ensure that no man is unjustly punished. If for some justifiable reason a petitioner was previously unable to fully assert his rights or was unaware of the significance of relevant facts, then to deny a full inquiry into his claims would be unreasonable, judicial economy considerations aside. The *Townsend* Court thus narrowly defined inexcusable neglect by reference to the deliberate bypass standard articulated in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *See* 372 U.S. at 317, 83 S.Ct. at 759; *see also Guice v. Fortenberry*, 661 F.2d 496, 506 (5th Cir. 1981) (en banc) (While the teachings of *Fay* have been rejected in several contexts, the Supreme Court has never suggested that the deliberate bypass standard should be replaced in the *Townsend* context.). The Court in *Fay*, in turn, keyed deliberate bypass to the standard for waiver of constitutional rights articulated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938): "an intentional relinquishment or abandonment of a known right or privilege."

The facts in this case relevant to the deliberate bypass issue are essentially undisputed. On January 3, 1986, Streetman appeared in state district court for the purpose of setting an execution date. At that appearance, Streetman expressed his desire to have the date set as early as permitted by law. In accordance with Streetman's desire, the state district court scheduled Streetman's execution to take place on February 6, 1986. Streetman continued to express his desire to be executed until January 28. On that date, Streetman's family finally persuaded him to permit a collateral attack on his conviction. The following day, January 29, Streetman's family notified counsel of Streetman's need for representation. That same day, habeas counsel

---

7. The state district court found, after conducting Streetman's evidentiary hearing that

> Counsel, after consulting with Applicant and conducting an independent investigation, determined that Applicant's confession was not impermissibly obtained and that therefore there was no valid legal basis upon which to object to its introduction in evidence.

This finding would ordinarily be entitled to a presumption of correctness in federal court under 28 U.S.C. § 2254(d). However, our conclusion "that the material facts were not adequately developed at the State court hearing" deprives the state factfinding of that presumption. 28 U.S.C. § 2254(d)(3).

obtained Streetman's signature on an application for writ of habeas corpus and began to prepare the application. Habeas counsel continued preparation of Streetman's application until three or four hours before the application was filed at 12:20 p.m. on February 3, 1986. Forty-five minutes later at 1:05 p.m., the state district court ordered a hearing on the application to begin the next morning, that is at 10:30 a.m. on February 4.

At the outset of the hearing, Streetman's attorney requested a continuance stating:

> Your Honor, I need more time to prepare for this hearing. I was given notice yesterday afternoon about 2:30 or 3:00 that this hearing had been set today. I need to subpoena witnesses—expert witnesses for testimony on the ineffective assistance of counsel issue. *I need to talk to Mr. Streetman. There are other matters outside the record that he needs to discuss with me.*

Prior to habeas counsel's motion for an extension of time, his only opportunity to discuss the case with Streetman had been for less than an hour on February 4, the day of the hearing. Most of that time had been spent determining whether Streetman wanted to pursue habeas corpus relief. Nevertheless, the state district court denied Streetman's motion for a continuance, even for a day, and the hearing proceeded. Streetman's habeas attorney first learned of facts which, if true, establish that Streetman's confessions were involuntary during conversations with Streetman's family at the conclusion of the state evidentiary hearing.

What is clear from the foregoing facts is that neither Streetman nor his habeas attorney made a tactical choice to leave evidence regarding the voluntariness of Streetman's confessions undeveloped. Instead, the failure was due to counsel's lack of opportunity to prepare. Streetman's counsel admitted he was unprepared and asked the state trial judge for a continuance until the following day so that he could discuss "matters outside the record" with Streetman. It was only after his motion for a continuance was denied and the

hearing concluded that counsel had his discussion with Streetman and Streetman's family and learned of material evidence.

It is well established that counsel's failure to marshall crucial evidence underlying a federal claim because of insufficient preparation or other neglect does not constitute a deliberate bypass. In *Townsend v. Sain,* for example, the Supreme Court held that counsel's failure to develop material facts through his witness could not "realistically be regarded as Townsend's inexcusable default." 372 U.S. at 322, 83 S.Ct. at 762. "The Court's refusal to regard this failure as an inexcusable default reflects its position that unintentional flaws of counsel should not bar the assertion or full development of federal rights." Wright & Sofaer, *Federal Habeas Corpus for State Prisoners: The Allocation of Fact-Finding Responsibility,* 75 *Yale L.J.* 895, 971 n. 273 (1966). Similarly, in *Guice v. Fortenberry,* this Court concluded "based on the scattershot nature of the various motions, [that] the defendants and their attorneys did not appreciate fully the relevance of the missing evidence. Such neglect is not inexcusable within the meaning of *Fay v. Noia.*" 661 F.2d at 507. Given *Townsend* and *Guice,* we cannot say that the failure of Streetman's habeas attorney to present material evidence due to his lack of time to prepare constituted inexcusable neglect. In reaching this conclusion, we emphasize the extreme time pressure under which counsel was operating.

The question remains whether Streetman himself is guilty of inexcusable neglect in failing to adequately develop material facts. The State points out that Streetman was present at the state evidentiary hearing and personally able to present some of the undeveloped evidence. Realistically, however, it cannot be said that a petitioner filing his initial application for habeas relief who has had no real opportunity to consult with his attorney has, by his silence at an evidentiary hearing, made a tactical choice to leave certain evidence undeveloped. Nor is there any indication that Streetman's silence was an intentional dilatory tactic. Streetman had, in

fact, actually acted to expedite his execution by insisting that the state district court set the earliest possible execution date. We conclude, therefore, that neither Streetman nor his habeas attorney was guilty of deliberate bypass in failing to adequately develop the material facts at the state evidentiary hearing.[8]

## VI.

Because material facts were not adequately developed at the state evidentiary hearing and because Streetman's failure to so develop the facts was not due to "inexcusable neglect," the federal district court erred in denying Streetman's motion for an evidentiary hearing. Consequently, we REVERSE and REMAND for such a hearing in order to permit the full development of material facts.

REVERSED AND REMANDED.

EDITH H. JONES, Circuit Judge, dissenting:

The majority have ordered a remand to the district court for an evidentiary hearing on the constitutional competency of petitioner's trial counsel in his capital murder case. The majority conclude that Streetman's allegations imply that facts material to determining his counsels' effectiveness were, through no fault of his own, not brought out in the state court habeas proceedings. I respectfully dissent for several reasons. In my view, Streetman's belated accusations are not material under the "deficiency" prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Streetman either merits no additional federal court evidentiary hearing because he has deliberately bypassed the state court system, or the district court should conduct a hearing on the preliminary issue of deliberate bypass. Finally, I believe that the conduct of an evidentiary hearing, unrestrained by the presumption of correctness contained in 28

U.S.C. § 2254(d), represents an unwarranted disregard of the state court's thorough findings on the competency of Streetman's trial counsel.

A brief recharacterization of the strategy pursued by Streetman's habeas counsel and the testimony before the state habeas court shed important light on the "new" material facts which the majority now seek to emphasize. Streetman was tried in 1983, and his capital conviction and sentence were affirmed by the Texas Court of Criminal Appeals in 1985. On January 3, 1986, in open court, Streetman expressed his desire to have the execution date set as early as possible and to avoid any further action taken on his behalf to delay execution. Execution was set for February 6, 1986. On January 29, Streetman was prevailed upon to sign an affidavit attached to an application for state writ of habeas corpus. The application, which recited in detail the perceived flaws in his attorneys' trial strategy, was not filed until the afternoon of February 3, five days later. The court ordered an evidentiary hearing the following morning. Streetman and his family appeared at the hearing with his attorney, Will Gray. The court delayed the hearing for 40 minutes to allow Streetman and Gray to confer. Gray more than once requested a continuance of the hearing for the purpose of obtaining expert witnesses to testify on the issue of trial counsel's effectiveness. The trial court, which originally stated that he did not mind if the hearing should continue another day, ultimately refused to do so when it appeared that the sole reason for continuance would be to obtain expert testimony.

The hearing lasted several hours and involved lengthy, detailed, and meticulous examination on the trial strategy employed by Streetman's defense attorneys. The hearing transcript is nearly 200 pages long. Testimony on the admissibility of Street-

---

**8.** While the deliberate bypass issue will in some circumstances require its own evidentiary hearing, such a hearing is not always necessary. In fact, in both *Townsend* and *Guice,* the Courts determined the absence of deliberate bypass without the benefit of an evidentiary hearing on the issue. In the instant case, the State does not suggest any need for such a hearing, nor does it indicate any additional evidence not already in the record that would be produced at such a hearing.

man's confessions occupies a not insignificant portion of the transcript.

Gray acknowledged in oral argument before this Court that some of Streetman's family members told him, *before* the state hearing concluded, about alleged promises made to Streetman to induce him to confess. Despite their presence in the courtroom, counsel neither called these witnesses nor informed the state trial court of their testimony. Streetman did not testify.

The trial court made written findings of fact and conclusions of law, described accurately the reasonable trial strategy of Streetman's counsel, recommended that relief be denied, and forwarded the record to the Texas Court of Criminal Appeals on February 5, 1986. Execution was stayed in the Court of Criminal Appeals until March 17, 1986. During those six weeks, Streetman never even attempted to inform the Texas courts that his claims were not adequately developed.

The state habeas court was thoroughly apprised of the basis for defense counsel's failure to challenge the admission of Streetman's confessions at trial. Streetman's counsel Mr. Coe outlined his trial strategy as evolving from Streetman's repeated admissions of guilt and statements that he wanted the death penalty rather than to spend his life in jail. Coe specifically inquired about Streetman's confessions to the police, and Streetman responded that he had been treated well. Streetman further told Coe that if he were required to take the stand, he would admit his guilt. On the basis of Streetman's firm pronouncements to Coe, supplemented by conversations with the interrogating officers and Streetman's wife, Coe concluded that the confessions could not be suppressed. Mr. McNeely, the "second-chair" defense attorney, testified in vague terms that he would have attempted to suppress the confessions because he felt they were involuntary. When pressed on the reasons for involuntariness, McNeely said only, "he told me that [he had not been in any way coerced] and also he told me that he had

been coerced. He told us 40 different thousand things during this trial." [1]

### I.

Stripped to its essentials, Streetman claims, and the majority find superficially persuasive, that his trial counsel failed properly to investigate the admissibility of his confessions because Streetman withheld from counsel at the trial level critical facts concerning the confession. Streetman has always held the key to unlocking this information. It is not the failure of counsel or of state proceedings, but of Streetman himself that creates the predicament in which he appears before this Court.

Under these circumstances Streetman's contention that his confessions were induced by valium and threats or promises should be unavailing. Effective assistance of counsel depends upon the objective reasonableness of counsel's conduct as well as the prejudice caused by an alleged error. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). No one can question the prejudice that Streetman would have suffered if his trial counsel unreasonably failed to investigate the background of his confessions. *Strickland*, however, requires a heavy measure of deference to counsel's judgments, particularly when they are based on information supplied to counsel by the defendant:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or

---

**1.** McNeely acknowledged that he had attempted to bargain for a life sentence for Streetman, a decision which implicitly concedes the admissibility of the confessions.

eliminated altogether. And when a defendant has given counsel a reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions...." 466 U.S. at 691–92, 104 S.Ct. at 2066–67.

*Strickland* answers the intimation by the majority that Streetman's failure to confide in or to supply complete information to his trial counsel renders the attorneys' performance constitutionally defective.[2] See *Johnson v. Cabana*, 805 F.2d 579, 582 (5th Cir.1986). The information on which defense counsel relied was fully aired in the state habeas hearing. Attorney Coe repeatedly stated that Streetman denied having been coerced and that from conversations with family members he had no reason to believe the confessions were inadmissible. Coe was no stranger to criminal lawsuits. He had been the district attorney in Hardin County for twelve years, and, by the affirmation of the federal district and state courts, he was a wily, careful and extremely competent practitioner. McNeely, questioned pointedly about the factual basis underlying his professed belief that Streetman confessed involuntarily, could allege no specific statements by Streetman or family members to substantiate his fear. McNeely, on the contrary, testified that Streetman told him "forty different thousand things." In summary, I believe that even if Streetman's most recent allegations are absolutely correct, he cannot prevail on his constitutional ineffec-

tiveness of counsel claim because he prevented its assertion in the trial court.[3]

## II.

The majority rely on *Guice v. Fortenberry*, 661 F.2d 496 (5th Cir.1981) (en banc), which holds that the criteria enunciated by *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) for a mandatory federal habeas hearing supplement the procedures set out in 28 U.S.C. § 2254(d). *Townsend* mandates a federal evidentiary hearing *inter alia*, "[i]f, for any reason not attributable to the inexcusable neglect of petitioner, ... evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing." 372 U.S. at 317, 83 S.Ct. at 759. Under *Guice* and *Townsend*, a petitioner must establish the absence of excusable neglect or intentional bypass of the state court procedures.

The majority, by focussing on the self-serving statements of petitioner's habeas counsel, have interpreted far too generously the standard for inexcusable neglect or deliberate bypass. The purpose of this standard is to enforce both the integrity and completeness of state court proceedings. If a petitioner could present one set of facts allegedly constituting ineffectiveness of counsel before the state court and then elaborate upon those facts in order to secure a second federal evidentiary hearing, the integrity of the state judicial process would be compromised. Encouraging such tactics is inimical to judicial economy in both the state and federal court systems.

Ordinarily, courts hold an evidentiary hearing preliminarily to determine whether a petitioner or his counsel was guilty of

---

**2.** Recognizing that constitutional effectiveness of counsel is a mixed question of law and fact, *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070, the Supreme Court nevertheless recognized that a state court's factfindings subsidiary to that issue, such as whether counsel's decision was based upon sound trial strategy, are entitled to a presumption of correctness. *Id.* The state habeas court made comprehensive findings on the strategy employed by Streetman's trial counsel.

**3.** The allegations springing from Streetman's relatives are no more convincing on the merits

of his claim. First, Coe spoke with Streetman's wife and McNeely with other relatives prior to trial and came up with no memorable evidence of involuntariness. Second, the family members had at least as much incentive as Streetman to inform defense counsel fully of the facts, and there is no suggestion that they were unavailable or unwilling to cooperate. Third, the duty to investigate the confessions rests, *in fine,* on counsel's evaluation of the facts related by Streetman, and he gave them nothing to go on.

excusable neglect or deliberate bypass. *Buckelew v. United States*, 575 F.2d 515, 519 (5th Cir.1978); *Thomas v. Zant*, 697 F.2d 977, 986–88 (11th Cir.1983), *vacated on other grounds*, —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986). Erroneously, I believe, the majority bypassed that requirement in holding that "habeas counsel's lack of preparation and consequent failure to fully articulate his ineffective assistance of counsel argument before the state district court was the cause of his failure to adequately develop the evidence." The majority also emphasize "the extraordinary time pressure under which habeas counsel was operating."

With all due respect, I cannot agree with this appellate court's findings of fact. Petitioner's habeas counsel Mr. Gray is among the most experienced capital defense counsel in the country. The paramount importance of Streetman's confessions can hardly have escaped his attention. Gray conferred privately with Streetman for 40 minutes before the hearing began. Gray carefully and extensively cross-examined Coe and McNeely concerning the basis on which they evaluated the confessions. His interrogation on all other issues demonstrated a thorough knowledge of the trial record and was bolstered by numerous transcript references. Gray represented to this Court that he became aware of Streetman's allegations of coercion during the state habeas hearing, while elsewhere Gray stated he did not find out these allegations until after the close of the hearing. In either event, the failure to bring this evidence before the Texas courts during seven weeks of proceedings there is significant, and I believe, inexcusable.

*Guice v. Fortenberry*, 661 F.2d 496 (5th Cir.1981) (en banc) cited by the majority, represents a narrow holding on the issue of deliberate bypass and is distinguishable from this case. Critically, *Guice* concluded that a federal evidentiary hearing was necessary because the state trial court never made findings of fact on the issue raised by the petitioner. *Id.* at 506. Second, the court referred to "the confused nature of the presentation of the claims to the trial court," *Id.*, suggesting that, "the defend-ants and their attorneys did not appreciate fully the relevance of the missing evidence." *Id.* at 507. *Guice* cannot be reconciled with this case, in which petitioner has been represented by able counsel at trial and in post-trial efforts and in which the state courts thoroughly considered Streetman's ineffectiveness claim.

An enlightening case in this area is *Thomas v. Zant*, 697 F.2d 977, (11th Cir. 1983), *vacated on other grounds*, —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), where the petitioner for the first time supplied the federal district court with an affidavit of his trial counsel that suggested a complete lack of trial preparation. Explaining why neither the affidavit nor any testimony from the trial attorney surfaced during state habeas corpus proceedings, the petitioner charged his *habeas* counsel with ineffectiveness. No such claim has been made here. The Eleventh Circuit, confronted in *Thomas* a more convincing case of attorney oversight than the present one, nevertheless remanded for a preliminary hearing on the issue of deliberate bypass.

The majority artificially narrow the issue of deliberate bypass to the conduct of Gray, ignoring Streetman's critical role in his own defense. *Guice* and *Thomas* properly reviewed the conduct of counsel because the issue or error or ineffectiveness in those cases turned on information not ordinarily known to the defendant. An enormous gulf separates that type of inquiry from this case. Streetman never confided the details of his allegedly coerced confessions to trial counsel or to Gray until during or after the state evidentiary hearing. To this day, we have received only allegations, and not a single affidavit from Streetman or any other proposed witness, concerning the confessions. Surely a petitioner may not escape the charge of deliberate bypass of state proceedings by never revealing or adequately revealing a claimed constitutional defect to his attorneys in connection with the evidentiary development of the case in state court. Equally fatal to his access to federal court should be habeas counsel's failure to seek a new

hearing in the state court for the purpose of adding significant additional allegations to petitioner's ineffectiveness claim.

### III.

By far the most troubling aspect of the majority's opinion is the signal sent to would-be habeas petitioners and to the state courts. If "crucial evidence" under *Townsend* can be satisfied by statements out of the petitioner's own mouth, and if a petitioner has no obligation to bring before the state court system his complete allegations concerning a constitutional claim, the obvious incentive is to give the state courts only a small taste of the grounds alleged for habeas relief.[4] Streetman could have raised his allegations in the normal course, aired them fully in the state courts, and received federal review under the presumption of correctness accorded state fact findings by 28 U.S.C. § 2254(d). His dilatory tactics have unfortunately led the majority to order a federal evidentiary hearing in which the state court findings will be accorded no deference.

The effect of ordering a mandatory federal evidentiary hearing in this case particularly causes friction with the state criminal justice system. Streetman waited until the eleventh hour to seek a stay of execution and then obtained two successive stays while the courts have been reviewing his claims. He had a full and fair hearing in the state trial court, which culminated in the issuance of specific findings and conclusions pertaining to effectiveness of counsel.[5] This Court, never having laid eyes on Streetman or his trial counsel, concludes that his late-breaking allegations of failure by counsel to investigate undermine the state court's findings concerning the nature of and basis for that strategy. Those findings have previously withstood attack in the Texas Court of Criminal Appeals and in the federal district court, which carefully and independently reviewed and approved the state court fact findings.

It is not the role of this Court even under the auspices of the Great Writ to accord state procedures so little deference. I respectfully DISSENT.

---

4. As the majority point out, this "weak case/strong case" tactic has been dismissed by the federal court when the state argued lack of exhaustion in the state courts. Certainly, it is an appropriate remedy to send Streetman back to the state court system to present his "real" claims initially. *Joyner v. King,* 786 F.2d 1317, 1320 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 653, 93 L.Ed.2d 708 (1986). This is not, however, an efficient remedy, and it plays into the hands of counsel, particularly in capital cases, who typically use every possible delaying tactic, secure in the belief that no judge will impose sanctions on them for exceeding the bounds of acceptable procedure.

5. The Fifth Circuit has been consistently reluctant to order a federal evidentiary hearing after a habeas petitioner underwent a state court hearing on the claim he brought to federal court. See *West v. Louisiana,* 478 F.2d 1026, 1031–32 (5th Cir.1973), *vacated on other grounds,* 510 F.2d 363 (5th Cir.1975) en banc; *Baldwin v. Maggio,* 704 F.2d 1325, 1328–29 (5th Cir.1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984). Federal hearings have been required, by contrast, in cases where the state court made no factual findings on the constitutional issue, *Mason v. Balcom,* 531 F.2d 717, 722 (5th Cir.1976), or where the state courts held no hearing on counsel's effectiveness, *Clark v. Blackburn,* 619 F.2d 431, 434 (5th Cir.1980).